## L. C. & MIL. RAILROAD CO. *vs.* VANDERPOOL.

ERROR TO CIRCUIT COURT, JUNEAU COUNTY.

Heard January 26.]                    [Decided May 4, 1860.

### *Lien—Railroads—Building.*

A railroad bridge is not subject to a mechanic's lien; it is not a "building" within the meaning of the statute making every dwelling house and other building" subject to a lien in favor of mechanics and material men.

The lien law gives the mechanic a lien upon a certain quantity of land on which the building is erected; but this cannot apply to a railroad bridge, or to the track of the road.

This was an action commenced by Abraham Vanderpool against the La Crosse and Milwaukee Railroad Company, Joseph Bailey and L. B. Bloomer & Co., to foreclose a mechanic's lien claimed upon the railroad bridge across the Wisconsin River at Kilbourn, for lumber furnished by him to Bailey, as sub-contractor, and Bloomer & Co. as contractors for constructing the bridge. The complaint is in the usual form describing the bridge, the contracts to build, and to furnish the lumber, &c., and describes the bridge as a "railroad bridge across the Wisconsin river, with a carriage way in connection therewith." The defendants failed to answer, but upon the trial they objected to the order of the court, that the lien of the judgment should attach to the bridge and premises on which it is situated, on the ground that the bridge is not a *building* within the meaning of the statute, which objection was overruled, and judgment entered accordingly on

the 29th of October, 1859, from which judgment the writ of error is herein brought.

*Emmons & Vandyke,* for the plaintiffs in error, relied upon the following authorities: Act, 1855, p 38; Rev. Stat., 1849, chap. 120; 7 Mass., 523; Webster's Dic., "Building;" *Roberts vs. Fowler;* N. Y., 632; Sess. Laws, 1858, p. 60; *Dunn vs. North Mo. Railroad,* 24 Mo., 493; *Williamson vs. N. Albany and Salem Railroad Co.,* Am. Law Reg., Nov., 1857; *McDonald vs. Lindall,* 3 Rawle, 492; Olympic Theatre, 2 Browne, 275; *Morgan vs. Arthurs,* 3 Watts, 140.

*S. S. Barlow & S. U. Pinney,* for the defendant in error.

The only question presented by the record in this cause is, whether a railroad bridge is a "building," within the spirit and meaning of the law relating to the lien of mechanics and others, R. S., 1849, chap. 120, and Session Laws of 1855, chap. 40; *Olmstead vs. McNall,* 7 Blackf., 387; *Pemrock vs. Hoover,* 5 Rawle, 310; Bouv. Law Dic.; Tom. Law Dic., "Bridge;" Wharton id.; 3 How., 108; Johnson Dic., "Bridge;" 3 New Am. Cycl., 684; Rev. Stat., 1849, ch. 4, § 1, sub. 12; Sess. Laws, 1855, ch. 40; 1 Encycl. of Arch., 65; 4 New Am. Cyclopædia, 86.

*By the Court,* PAINE, J. This action was brought to enforce a lien upon the railroad bridge of the plaintiff in error, which crosses the Wisconsin river, for materials furnished in building the same. Our statute gives a lien for work done, or materials furnished in the erection or construction of "any dwelling house or other building," and the only question in this case is, whether the words " other building" can be construed to include a railroad bridge.

It is conceded that the words of the statute must be construed according to their ordinary and common sense. And the counsel for the defendant in error then cite the definitions of a number of standard lexicographers, which include as buildings, structures of various kinds, which are not houses, or designed for the habitation of either men or animals, or the

sheltering of property. And it cannot be denied, that the words "build" and "building," as a verb and participle, are commonly used as applicable ·to the erection of numerous structures, which would not be included among any of the last named classes. Thus, we speak of building bridges, building fences, sidewalks, embankments, &c. But · notwithstanding this, we think the word building, as a noun, has a common, well understood meaning, exclusive of structures of this character, and including only those which have a capacity to contain, and are designed for the habitation of man or animals, or the sheltering of property.

We say that things are built which we do not call buildings after they are completed. Thus, suppose a witness on the stand should testify that the owner of a certain lot had built a fence upon it. If counsel desired to know if the lot was otherwise vacant, he would not ask if there were any *other* buildings upon it, but would ask if there were *any* buildings upon it. And if there were nothing but the fence, the witness, using the language in its ordinary signification, would undoubtedly answer no. Because, although he had spoken of building the fence, yet he would not call it a building, and nobody would ordinarily so consider it. So, if one were asked if there were any buildings on the streets, if nothing but sidewalks were there, he would unhesitatingly answer no, yet might, at the next moment, speak of building a sidewalk. So when we undertake to state how many buildings there are on any farm or lot, or in any village or town, we are never understood to refer to fences, bridges, or anything of that sort, but only to those structures which have a capacity to contain, commonly included among buildings. And this common idea seems to be strictly correct, according to the most accurate analysis. In Crabbe's Synonyms, 498, cited by the counsel for the plaintiff in error, the most precise and accurate distinction between the words build, erect, and con-

struct, seems to be stated. It says: "What is *built* is employed for the purpose of receiving, retaining or confining ; what is *erected* is placed in an elevated position ; what is constructed is put together with ingenuity." And again : "*Houses* are *built,* monuments erected, and machines constructed." Such nice distinctions and shades of meaning should never be observed in opposition to the ordinary and common understanding of men, unless the intent of the statute manifestly required it. But here the common meaning of the word "building," as a noun, is identical with its most exact signification ; and in our opinion it does not include a railroad bridge, or any other bridge.

On the first statement of the question, it seems obviously outside of the intention of the statute. Why include a railroad bridge any more than any other part of the track ? It is all a structure built for use. So is a plank road, or a McAdamized road. And we can see no more reason for including that part of such roads which cross a river among buildings, than for including any other part which has required labor and materials in its construction, given by the statute itself, to the word "highway." It provides that this word may be construed to include any road legally laid out, &c., and all bridges upon the same." It would certainly seem to be an unwarrantable construction to say, that any part of a common highway was intended to be included in the phrase " other building," and made liable to be sold to enforce a mechanic's lien. Yet there is no ground for any distinction between a railroad bridge, and any other in this respect, unless it be that the former is more essentially a part of the whole road, and less capable of being severed from it, and therefore would be less likely to have been intended. The statute, also, by speaking of the lot on which the building stands, and making the interest of the owner therein, to an amount not exceeding one acre in a city, or

forty acres in the country, liable to the lien, seems to indicate clearly that it did not contemplate bridges, as included within its provisions.

The case cited by the counsel for the defendant in error from 7 Blackf., 387, we think was properly decided. The structure in that case was clearly a building within the meaning, which we attribute to our statute. It was a floating but stationary warehouse, stationed along the bank of the river of which the owner held a lease. The pleader who drew the bill evidently had in mind the same idea of a building for which we are contending, for he took pains expressly to state that it was "*a building with perpendicular walls, and a shingled roof,*" allegations which could only have been designed to bring it within the ordinary meaning of the word building. The court held that the fact that it was a floating building did not prevent it from being a building, and that the owner had such an interest in the place where it stood as could be sold on execution. This we think was very proper, but it comes far from sustaining the position that the bridge is a building.

We think therefore, that the court erred in holding that the railroad bridge was subject to a mechanic's lien. And for this reason the judgment must be reversed with costs.

There being two cases between the same parties involving the same question, this opinion will dispose of both.

The judgments in both are reversed with costs.

DIXON, C. J., having been of counsel for Vanderpool, took no part in this decision.