Argued June 17, affirmed July 14, 1925.

# EUGENE P. WAITE ET AL. *v.* SIUSLAW BOOM COMPANY.

### (237 Pac. 664.)

**Constitutional Law — Levees and Flood Control — Act Authorizing Land Owners to Recover Cost of Repairing Dike on Adjoining Tract from Owner Thereof Held not Unconstitutional as Inimical to Due Process Clause.**

1.   Sections 7297–7300, Or. L., authorizing owners of lands benefited by dike on contiguous tract to rebuild or repair it, on owner's refusal to do so, and recover reasonable value of material, labor, etc., from such owner, *held* not inimical to due process clause of Constitution.

**Levees and Flood Control—Notice to Land Owner of Examination of Dike by County Judge Held Sufficient.**

2.   Notice by county judge to land owner neglecting to repair dike, definitely describing place, and naming day and hour of commencement of examination thereof, *held* sufficient under Section 7298, Or. L., though not stating when examination would be completed, and adding, after hour named, "or as soon thereafter as the undersigned can examine such premises."

**Levees and Flood Control—Land Owner Filing Answer, Appearing and Arguing Necessity of Repairing Dike, cannot Urge Informality of County Judge's Notice.**

3. Land owner, filing answer to complaint, appearing by attorney, and making argument concerning need of repairing dike on his land, cannot, when sued for cost of repairs, object to informality of county judge's notice to him, under Section 7298, Or. L., of preliminary examination of dike.

**Trial—Reading Only One of Two Sections of Statute to Jury not Error, in View of Submission of Matters Referred to in Unread Section.**

4. Where facts as to condition of dikes on plaintiffs' and defendant's lands and benefit to lands affected, referred to in Section 7298, Or. L., were submitted to jury by concise and appropriate instructions, in action for cost of repairing defendant's dike, court did not err in reading to jury Section 7297 only; jury not being required to pass on matters of notice and preliminary complaint.

**Levees and Flood Control—Compliance With Statute Held Necessary to Recover Cost of Repairing Dike.**

5. To show liability of land owner to pay owners of adjoining lands cost of repairing latter's land, it must appear that Sections 7297, 7298, Or. L., as to right of action, preliminary examination of dike, and notice to delinquent owner, have both been complied with by plaintiff.

**Levees and Flood Control—Statute Held to Contemplate That Cost of Repairing Dike on Adjoining Tract at Owner's Expense Shall be Commensurate With Benefits to His Land.**

6. Section 7298, Or. L., authorizing county judge, on determining, that dike on tract contiguous to lands of persons complaining is in need of repair and of sufficient benefit to lands affected to warrant its maintenance, to direct owner of such tract to repair it within reasonable time, contemplates that cost of repair shall be commensurate with, and not exceed, benefits to such tract, though statute does not contain word "commensurate."

**Levees and Flood Control—Whether Cost of Repairing Dike on Adjoining Tract was Commensurate With Benefits Thereto Held for Jury.**

7. Whether cost of repairing dike on tract adjoining other lands benefited thereby was commensurate with benefits to such tract *held* for jury, in action under Sections 7297–7300, Or. L., by owners of benefited lands to recover cost of repairs.

**Levees and Flood Control—Reasonable Value of Labor and Material in Repairing Dike on Adjoining Tract and Payment Therefor Held for Jury.**

8. In action under Sections 7297–7300, Or. L., to recover cost of repairing dike on tract adjoining plaintiffs' lands, reasonable value of labor and material and whether plaintiffs paid therefor *held* for jury.

**Levees and Flood Control—Amount Recovered by Land Owners Repairing Dike on Adjoining Tract Should not Exceed Reasonable Value or Cost of Repair.**

9. Under Sections 7297, 7299, Or. L., amount recovered by land owners, suing owner of adjoining tract for cost of repairing dike thereon, should not exceed either reasonable value or cost of repair.

**Levees and Flood Control—Whether Land Owners Repairing Dike Built It Higher Than Necessary, and Whether Their Dike was in Good Repair, Held for Jury.**

10. Whether land owners, repairing dike on adjoining tract, built it higher than necessary, and whether their own dike was in good repair, *held* for jury in action, under Sections 7297–7300, Or. L., to recover cost of repairs from owner of adjoining tract.

**Levees and Flood Control — Clause in Contract Permitting Land Owners to Enter and Repair Dike on Adjoining Tract Held not Covenant to Keep Dike in Perpetual Repair.**

11. Clause in contract, providing that, if break occurred in dike, owner of land on which located should afford every reasonable opportunity to owners of adjoining tracts to enter and repair dike, *held* not covenant by latter to keep dike in perpetual repair.

**Levees and Flood Control—Testimony as to Land Owners' Rejection of Contract to Maintain Dike Held Properly Excluded in Action by Adjoining Owners for Cost of Repairing It.**

12. In action against corporate owner of tract adjoining plaintiff's lands to recover cost of repairing dike on defendant's land, testimony as to defendant's rejection of contract, requiring it to maintain dike, *held* properly excluded as relating to negotiations leading to contract containing no such provision.

**Levees and Flood Control—Whether Land Owner Agreed to Maintain Dike Held Immaterial in Adjoining Owner's Suit for Cost of Repairing It.**

13. Whether corporate land owner agreed with owners of adjoining lands to maintain its own dike *held* immaterial in their action, under Sections 7297–7300, Or. L., to recover cost of repairing dike.

**Levees and Flood Control—Instructions Held not Erroneous as not Limiting Recovery to Reasonable Value of Material and Labor in Repairing Dike.**

14. In land owners' action, under Sections 7297–7300, Or. L., to recover cost of repairing dike on adjoining tract from owner thereof, instructions, taken together, *held* not erroneous as not limiting recovery to reasonable value of material furnished and labor performed.

**Levees and Flood Control—Charge That Plaintiffs must Prove That Their Dike was in Repair to Recover Cost of Repairing Dike on Adjoining Tract Held Sufficient.**

15. In absence of request for further or more specific instructions on question of benefit to land by repair of dike thereon by owners

of adjoining lands, charge that latter must prove that dike on their lands was in repair to recover cost of repairs, under Sections 7297–7300, Or. L., was sufficient.

See (1) 36 **C. J.** 1004.   (2) 36 **C. J.** 1004.   (3) 36 **C. J.** 1004.   (4) 38 **Cyc.** 1598.   (5) 36 **C. J.** 1004.   (6) 36 **C. J.** 1004.   (7) 36 **C. J.** 1004.   (8) 36 **C. J.** 1004.   (9) 36 **C. J.** 1004.   (10) 36 **C. J.** 1004. (11) 36 **C. J.** 1004.   (12) 22 **C. J.** 1102.   (13) 36 **C. J.** 1004.   (14) 36 **C. J.** 1004.   (15) 36 **C. J.** 1004.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.

This action was brought under Chapter 424, General Laws of 1919, page 801, codified as Sections 7297–7300, Or. L. The cause was tried to the court and a jury and a verdict rendered in favor of plaintiffs. From a judgment entered thereon defendant appeals.

The plaintiffs allege in their complaint, in substance, the following: That the plaintiffs are the owners of certain lands described in the complaint and that the defendant is also the owner of certain lands described therein; that all of the property described lies north and west of what is known as Duncan Slough, which bounds the property on the south and east, and that the lands belonging to the plaintiffs and the defendant are contiguous tracts, and are not in a diking district; that the said property is being protected by a common dike so constructed as to afford a common benefit to the lands affected thereby; that said lands have been so protected since about 1912, until that portion of the dike situated upon the premises of defendant became broken and destroyed and in such condition of lack of repair that the lands benefited and protected thereby were being injured by reason of such condition about 1919.

During the months ·of July, August and September, 1919, plaintiffs attempted to agree with the defendant with reference to the repair, reconstruction or rebuilding of said dike and defendant refused to agree with plaintiffs regarding the matter, and refused to rebuild or repair the dike. On October 9, 1919, plaintiffs complained to the Honorable H. L. Bown, the county judge of Lane County, Oregon, the county in which said lands are situated. A copy of this complaint is attached to the complaint herein.

The county judge, after giving due notice to the defendant of the time when he would examine the dike, examined the premises described in the complaint and determined that the said dike was in need of reconstruction, rebuilding and repair, that the same was of sufficient benefit to the land affected thereby to warrant its maintenance, and also found that the dike on the contiguous tracts of plaintiffs' land was in a good state of repair, and ordered the defendant to repair its dike within thirty days thereafter. A copy of the findings and determination of the county judge was duly served upon the defendant and a copy thereof attached to the complaint. That the defendant failed, neglected and refused to repair, rebuild or reconstruct the dike in accordance with the said notice and findings of the county judge, or at all. Thereafter, between January 8, 1920, and October 1, 1920, plaintiffs proceeded to repair and rebuild the said dike and necessarily expended in the rebuilding, reconstructing and repair of the dike, upon the premises of the defendant, the sum of $1,502.25, which was the reasonable and fair value of the work of repairing, rebuilding and reconstructing the dike, upon the premises of the defendant, which was paid by plaintiffs. That since the construction

of said dike the plaintiffs have maintained and kept in good repair and condition that portion of the dike situated upon their lands. That the dike was not constructed under any agreement which provided for the maintenance of the same.

The defendant in its answer admitted its corporate existence and the ownership of the lands by the respective parties, its location and that the plaintiffs complained to the county judge, and denied the other allegations of the complaint, except as otherwise alleged in the answer, and then set forth four separate defenses.

First, in effect, that the defendant was organized for the purpose of building, owning and operating log booms, running logs in the Siuslaw River and acquiring property necessary therefor; that defendant entered into a contract with plaintiffs for certain riparian rights along Duncan Slough and purchased lots 1 and 10 in Section 15; that the Waites desired to build a dike along the slough to reclaim their lands from overflow by the tides and freshets; that in order to get the riparian rights along the land of the plaintiffs it agreed to pay for the building of the dikes along its own land in Section 15 and to convey said lot 10 to plaintiffs; that the Waites were to build the dike in a good and substantial manner, and that they failed to build the dike of sufficient height and dimension on the defendant's property where the break occurred; that the plaintiffs were themselves responsible for the break on account of the faulty construction of said dike.

Second, the defendant alleged there was an agreement with the Waites whereby the defendant was to be to no further expense on said dike.

115 Or.—21

The third allegation is to the effect that the only breaks on the dike were one of fifteen or twenty feet and one of about 100 feet, both on Lot 1, Section 15, and that the actual cost of repairing said breaks did not exceed the sum of $100.50; that the defendant's dike was fully as good as plaintiffs' dike.

Fourth, that the dike on the land of defendant is not of sufficient importance to the defendant to warrant its maintenance by defendant.

The plaintiffs filed the reply and put in issue the new matter of the answer.

At the close of plaintiffs' testimony the defendant moved for a nonsuit on substantially the following grounds; that the plaintiffs had failed to prove their own dike was in a good state of repair; that there was no evidence in the case to show what the value of the repair was to put the dike in the same state of repair as that of the Waite's dike; that there was no evidence to show that the benefits to the Boom Company's land are commensurate with the cost of the repair of the dike.

At the close of the whole testimony in the case the defendant renewed the motion for a nonsuit. The motions were overruled and the defendant excepted. The defendant also assigns errors in the ruling of the court as to the admission of the testimony and also in the instructions to the jury.        AFFIRMED.

For appellant there was a brief over the name of *Messrs. Williams & Bean,* with an oral argument by *Mr. John M. Williams.*

For respondents there was a brief over the name of *Messrs. Potter, Foster & Immel,* with an oral argument by *Mr. E. O. Potter.*

BEAN, J.—Section 7297, Or. L., provides as follows:

"Whenever two or more contiguous tracts of land, not in a diking district, the property of separate owners, have been protected by a common dike, or by separate dikes so constructed as to afford a common benefit to the lands affected thereby, or upon which said dikes have been constructed, and any portion of said dike or dikes has become broken or destroyed or in such condition of repair that the land or lands intended to be benefited and protected by said dike or dikes are being injured by reason of the said broken, destroyed or other bad condition of said dike or dikes or any part thereof, and the owner or owners of the land or lands upon which said broken or destroyed dike or dikes are located refuse to rebuild, repair, reconstruct or otherwise improve the same so as to afford the proper protection and benefit to said land, the owner or owners of the other contiguous tracts protected and benefited as in this act designated, may attempt to agree with the owner or owners of the land upon which is located the said broken, destroyed or otherwise out of repair dike or dikes, with reference to the repair, reconstruction or rebuilding of said dike or dikes, and if said owner or owners refuse to rebuild, reconstruct or repair said dike or dikes then the owner or owners of the other contiguous tract or tracts of land affected by said dike or dikes as herein designated, and upon whose land the dike or dikes are in a good condition of repair, may reconstruct, rebuild or repair the said broken or destroyed dike or dikes and shall be entitled to recover the reasonable value of the material furnished and labor used in rebuilding, reconstructing or repairing the same, together with the cost and disbursements of such action, from the owners of said land in any court having jurisdiction; said action to be prosecuted in the name of said owner or owners and against the delinquent party. * * "

Section 7298, Or. L., provides thus:

"If anyone neglect to repair, rebuild or reconstruct such dike or dikes as herein specified, then the owner or owners of such contiguous tract or tracts of land may complain to the county judge of the county in which the lands or some portion thereof are situated, who, after due notice, shall examine the premises and if he determines that the dike or dikes are in need of reconstruction, rebuilding or repair, and that the dike or dikes are of sufficient benefit to the lands affected thereby to warrant their maintenance, and if he finds that the dike or dikes on the other contiguous tract or tracts owned by the persons complaining, are in a good state of repair, he shall so signify in writing and shall cause to be served upon the delinquent party a copy of such finding and shall direct the said delinquent party to rebuild, reconstruct or repair the said dike or dikes within such time as he shall adjudge to be reasonable."

Section 7299, Or. L., provides in effect, that if such dike or dikes be not repaired accordingly, the complainants may repair or rebuild the same and recover the value or cost of rebuilding, reconstructing or repairing the dike from such delinquent owner.

Section 7300, Or. L., provides in substance that the provisions of this act shall not apply to dikes heretofore constructed under an agreement between the owners of contiguous tracts of land providing for the maintenance of said dike.

The testimony, on the part of the plaintiffs, tended to show, among other things, that at the time alleged the dike of the defendant was out of repair; that there were holes through the dike and one under it; that the dike had settled in places so that water washed over the dike and cut away the inside thereof to quite an extent so as to let the water through and over the same; and that the lands intended to be benefited and protected by the dike were injured by

reason of the broken condition of the same. That the plaintiffs' dike was in a good state of repair; that the dikes are of sufficient benefit to the lands affected thereby to warrant their maintenance; that the defendant neglected and refused to repair its dike; that the sum of $1,502.25 was expended by plaintiffs in the repair and reconstruction of the dike of the defendant and that the same was the reasonable value of the labor used in rebuilding or repairing the same. That the dike was not constructed under any agreement which provided for the maintenance of the same between the plaintiffs and defendant or between the owners of the contiguous tracts of land protected by such dike.

The testimony upon material issues in the case was conflicting. The defendant alleged and contended that there was an agreement between the plaintiffs and the defendants before the construction of the dike, whereby the defendant was to be at no expense for the maintenance of the dike. Defendants also claimed that its dike was in good repair except for two or three small breaks. These questions were fairly submitted to and passed upon by the jury.

1. The defendant challenges the constitutionality of the statute of 1919, under which this action was brought as depriving the person of his property without due process of law. This statute was evidently taken from and patterned after the partition fence statute of this state, Sections 9544 and 9545, Or. L. The same principle is involved in the diking statute as in the partition fence statute. In 25 C. J. 1020, Section 8b, it is stated:

"*Constitutionality.* Laws regulating the building and maintenance of partition fences are enacted in the exercise of the police power and are sustained as

constitutional. They are not within the constitutional prohibition against laws which deprive a person of property without due process of law, even though they do not expressly provide for notice of proceedings by the fence viewers.''

Such statutes are uniformly upheld as a proper and just exercise of the police power of the state in nearly every state in the Union. In *Coster* v. *Tide Water Co.,* 18 N. J. Eq. 55, the syllabus reads:

''The laws regulating partition fences, party walls, the enclosure of woodlands, the ditching and embanking of meadows, and other like police regulations, whether general or special laws, are an ancient branch of legislation. Their object is to regulate the management and enjoyment of property by the owners, or a majority of them, at their common expense, and they are a proper and constitutional exercise of legislative power.''

In *Tomlinson* v. *Bainaka,* 163 Ind. 112 (70 N. E. 155), which is a leading case, the language of Mr. Justice Monks is recorded at page 118 of the state report (70 N. E. 158) as follows:

''Laws compelling the building, maintaining, and keeping in repair of partition fences are enacted in the exercise of the police power, and are an ancient branch of legislation which has been uniformly sustained. *Coster* v. *Tide Water Co.* (1866), 18 N. J. Eq. 54, 68, 69; *McKeever* v. *Jenks* (1882), 59 Iowa, 300, 306 (13 N. W. 295); *Talbot* v. *Blackledge* (1867), 22 Iowa, 572, 578; *Wills* v. *Walters* (1869), 5 Bush (Ky.), 351: *Gilson* v. *Munson* (1897), 114 Mich. 671 (72 N. W. 994); Tyler, Boundaries and Fences, 343, 504; 22 Cent. L. J., 197–203; 12 Am. & Eng. Ency. Law (2 ed.), 1047, 1048, 1050–1057; *Myers* v. *Dodd* (1857), 9 Ind. 290 (68 Am. Dec. 624, and note 629–635); *Brady* v. *Ball* (1860), 14 Ind. 317, 319; *Cook* v. *Morea* (1870), 33 Ind. 497; *Bartlett* v. *Adams* (1873), 43 Ind. 447; *Rhodes* v. *Mummery* (1874), 48 Ind. 216; *Bruner* v. *Palmer* (1886), 108 Ind. 397 (9 N. E. 354); *Haines*

*v. Kent* (1858), 11 Ind. 126; *State ex rel.* v. *Kemp* (1894), 141 Ind. 125 (40 N. E. 661); *Enders* v. *McDonald* (1892), 5 Ind. App. 297 (31 N. E. 1056).''

The statute regulating the repair of a dike or dikes which protect two or more tracts of land of separate owners, constructed so as to afford a common benefit to the lands affected thereby, in order to afford proper protection and benefit to said lands, where the statute provides a method of determining that the dike or dikes are in need of reconstruction or repair, and that they are of sufficient benefit to the lands affected thereby to warrant their maintenance, thereby affording a common benefit to the different owners of the land protected thereby, is not inimical to the due process clause of the Constitution.

2. The defendant urges an objection to Section 7298 for the reason that it provides for the notice to the delinquent land owner but does not provide for any hearing as to the state of repair of the dikes of the respective parties. It also contends that the notice given to the defendant by the county judge is too indefinite as to time and place.

The notice is an exhibit to the complaint. It informs the defendant that a complaint has been filed with the county judge by plaintiffs, complaining that the boom company has failed to maintain the dike located upon its property on the north and west side of Duncan Slough in Tp. 18 S., R. 11 West, Willamette Meridian, and then reads thus:

''You are further notified that the undersigned County Judge of Lane County, Oregon, pursuant to Chapter 424 of the General Laws of Oregon for 1919, will examine the premises referred to in said complaint to determine the question of whether said dike is in need of reconstruction, rebuilding or repair; and the further question of whether the said dike is of

sufficient benefit to the lands affected thereby to warrant its maintenance; and the further question as to whether or not the said dike on the tracts of land owned by the complainants is in good state of repair, which said examination of said land will be made on the 30th day of October, 1919, at the hour of 11 o'clock A. M. or as soon thereafter as the undersigned can examine said premises."

3. The notice is dated and signed by the county judge. Service of the notice and of the complaint upon which it was based was accepted by the attorney for the boom company. We fail to see that the notice is defective. The place of examination of the dike is definitely described, the day and the hour of the commencement of the examination of the dike by the county judge is named in the notice. It is immaterial when the examination would be completed and the words, "or as soon thereafter as the undersigned can examine said premises," do not add anything to or detract from the notice. The defendant, if it had desired could have appeared at the time and place named—the dike—and participated in the examination. The statute does not contemplate that as such a preliminary examination, a trial of the issues will be had as upon the trial of the action. Upon objection being made as to the sufficiency of the notice, the plaintiffs offered to show that the defendant filed an answer to the complaint filed with the county judge in the matter, and appeared by its attorney and made argument concerning the determination of the question by that official.

Under these circumstances the defendant is not in a position to urge objection to the informality of the notice. All of the questions passed upon preliminarily by the county judge were thoroughly litigated in the trial of this case before the Circuit Court.

The record indicates that there was a compliance with the requirements of Section 7298, Or. L., by plaintiff, precedent to the commencement of this action.

4. The trial court read Section 7297, Or. L., to the jury but did not read Section 7298. Defendant contends that the court erred in submitting the cause to the jury under Section 7297, Or. L., and ignoring Section 7298. Concerning the facts pertaining to the condition of the respective dikes, and the benefit to the lands affected thereby, referred to in Section 7298, they were all submitted to the jury by the court by concise and appropriate instructions. The jury would not be required to pass upon the matter of notice and preliminary complaint.

The county judge, after the notice and at the time mentioned therein, made the examination of the premises and made findings of his determination in writing. The findings of the county judge recite the making of the complaint to him by plaintiff, the notice and acceptance of service thereof, described the dikes and lands of the respective parties, that he had examined the premises and the dike, and that the dike in front of defendant's property was in need of repair,

"and that said dike is of sufficient benefit to the lands affected thereby to warrant its maintenance * * that the said dike in front of the lands owned by complainants * * is in a good state of repair, and that the said dike in front of the land of the Siuslaw Boom Company, as the same is described, is out of repair and unless repaired may permit great injury to be done to the property of the said Warner C. Waite and Eugene P. Waite."

And directed the defendant company to rebuild, reconstruct or repair the dike in front of its property within thirty days.

The county judge was a witness at the trial and fully explained what he found in the premises.

The statute provides a fair method of determining whether the owner of a part of a common dike is delinquent in the matter of keeping his portion of the same in repair, and whether the dike is of sufficient benefit to the lands affected thereby to warrant its maintenance and also whether the dike of the owners of contiguous tracts of land, who complain, is in a good state of repair. Such statutes have often been upheld by the courts.

5. Where the owner of separate contiguous tracts of land have constructed a dike or dikes adjacent to their respective tracts of land so that the same will afford a mutual or common protection and benefit to their several tracts of land sufficient to warrant the maintenance of such dikes, in the absence of any agreement between the parties for the maintenance of the dike, the statute imposes upon each owner of such a separate contiguous tract and dike adjacent thereto, the duty of keeping his dike in repair so as to prevent injury to the lands intended to be benefited, and in the event that such an owner is delinquent in repairing or reconstructing his dike, the law imposes upon him a liability for the reasonable value of the material furnished and labor used in rebuilding or repairing the same by the other owners of contiguous tracts protected by the common dike upon whose land the dikes are in a good state of repair. Such liability must be brought about under the terms and conditions of the statute.

Sections 7297 and 7298, Or. L., must be read and construed together. In order to show a liability on the part of defendant it must appear in the present case that both of these sections have been complied

with on the part of plaintiff. In short, the statute, in effect, provides an implied agreement to repair or pay for repair where the facts and conditions enumerated in the statute prevail.

6, 7. The defendant urges that the statute does not contemplate that the cost of the repair on one's land shall be "commensurate" with the benefits thereto, and that the complaint does not allege that the land of defendant will be benefited by the repair. The language of the statute is, "that the dike or dikes are of sufficient benefit to the lands affected thereby to warrant their maintenance," and the language of the complaint is in substance the same as the statute. While the statute does not contain the word "commensurate" it is understood to mean the same as contended by defendant, and that the cost of repair should not exceed the benefit to the land. This matter was all thoroughly explained *pro* and *con* before the jury and was very appropriately passed upon by that tribunal.

The testimony indicated that the defendant's land was increased in value by reason of its being protected by the common dike, the amount ranging from about $75 to $125 per acre; that nearly all of the land was susceptible of cultivation; that defendant rented its land for $110 per annum and it was not in a high state of cultivation. It also seems that the dike is made use of by defendant in connection with its boom.

8. It is urged by counsel for defendant that there was no testimony to show the reasonable value of the labor and material expended in the repair of the dike of defendant or that plaintiff paid therefor. The testimony upon this point is that plaintiff employed a Mr. Patterson with a dredge and crew to

perform the work of repairing the dike of defendant and paid $7.50 an hour with the exception of the last part of the work he charged $8 per hour, and that such prices were reasonable; that the amount paid Patterson, $1,502.25, was a reasonable amount for the necessary work performed by him in repairing the dike in front of the land of defendant. The point is not well taken.

The jury no doubt understood the witness, Warner C. Waite, to swear that the amount he paid Patterson, $1,502.25, was a reasonable amount for the work. This, in connection with the evidence of the reasonable value per hour of the work, tended to show the reasonable value of the work done on defendant's dike. This witness swore:

"We paid $7.50 an hour, with the exception of one or two places where he charged eight dollars an hour, and he worked eight or nine hours."

9. There was no conflict in the evidence in this respect. This testimony indicated the amount plaintiffs paid Patterson for the work. The statute mentions both "reasonable value" and "cost" of such repair, and the amount to be recovered in an action of this kind should not exceed either limit.

10. Defendant complains that the plaintiffs, in repairing the dike of defendant, built it higher than necessary, and then built their own dike up to conform therewith. There was testimony to the effect that it was necessary to raise the dike of defendant four or five feet in places, as it had settled where the ground was soft and had not been kept up and the jury practically so found. This was peculiarly a question for the jury under the evidence. The testimony tended to show that plaintiffs kept their dike in a good state of repair. It had settled some

in places and plaintiffs raised it. Under the testimony it cannot be declared as a matter of law that plaintiffs' dike was not in good repair. There was no error in denying defendant's motions for a nonsuit.

11. The defendant assigns error in the ruling of the court in sustaining the objection of the plaintiffs to the testimony of Mr. Starret, claimed to be to the effect, that the Siuslaw Boom Company was not to keep up the dike. The testimony, on the part of the plaintiff, was to the effect that there was no agreement between the plaintiff and defendant for the maintenance of the dike. The defendants claimed that about the time of the construction of the dike opposite its lands, it was understood that the defendant should not be liable for the maintenance of the dike. This seems to be based largely upon a clause in the contract signed only by plaintiffs in regard to the construction of the dike, the conveyance of a lot to plaintiffs by defendant, the amount to be paid by defendant for the construction of the larger portion of the dike opposite its land, and the conveyance by plaintiffs to defendant of certain riparian rights as boom privileges adjacent to their lands. The contract was dated September 29, 1911. The negotiations relating thereto had been pending between the parties for about one year prior to its execution. Near the close of the agreement this clause is inserted, "In case a break occurs in the dike, party of the second part (defendant) shall afford every reasonable opportunity to party of the first part (plaintiffs) to enter and repair the dike." This clause has no semblance of a covenant on the part of plaintiffs to keep the dike of defendant in perpetual repair. Both parties were permitted to

testify as to whether or not any agreement had been made between them providing for the maintenance of the dike.

12. Mr. Starret, the president of the defendant company, when a witness for defendant, after referring to the contract mentioned, which was Exhibit 1, was asked: "Q. State whether or not the Waites had tried to obtain an agreement from you prior to this, by which you were to maintain the dike?" The objection to this question by plaintiff was sustained. Then he was asked, "Q. Was there an agreement of that kind prepared and submitted to you?" The objection by plaintiff to this question was sustained. Thereupon the defendant tendered the following testimony:

"We offer to prove by this witness that a contract was submitted to the witness, as president of the Boom Company, containing the provision whereby the Boom Company was to maintain the dike, and it was rejected on that account, and finally terminated in the contract Exhibit 1."

The court very properly ruled against any of the testimony relating to the negotiations leading to the contract (Exhibit 1). The ruling permitting each party to testify as to whether or not there was any agreement in writing or any oral agreement between the parties providing for the maintenance of the dike was liberal and the defendant has no reason to complain thereof.

13. After the enactment of the statute it became immaterial whether the defendant agreed to maintain its own dike or not. The court treated the clause in the contract (Exhibit 1) as ambiguous and permitted the defendant's witness to testify in relation to the above quoted clause as follows:

"Q. What was meant by that language? A. It was meant to give them an opportunity to go on our land and repair this dike without getting authority from us."

Afterward the plaintiffs were permitted, over the objection of defendant, to introduce testimony tending to negative the claim of defendant in regard to the written clause. As we view the matter, the clause in the contract and the testimony in relation thereto was wholly immaterial to the issues in this case. The defendant relied upon the clause in question and was not prejudiced by any ruling pertaining thereto, if erroneous, and has no reason to complain in this respect.

14. The defendant claims error in the instructions of the court to the jury, that if they found in favor of the plaintiffs, the plaintiffs would be entitled to recover the cost of reconstructing the dike on Lot 1 and the dike on the Bergman place. It is claimed that the instruction did not limit the recovery to the reasonable value of the material furnished and the labor performed in the repair of the dike. We do not so understand the instructions of the court when taken all together.

After stating the issues at length, the court instructed the jury: That the first question for them to determine was whether or not there was an agreement between the defendant, Siuslaw Boom Company and the plaintiffs, under the terms of which the defendant was not to be out any expenses in maintaining the dike in question, and if they found there was such an agreement they should find for the defendant. That the plaintiffs must prove that the dike affords common benefit to the lands affected; that the dike became out of repair; that the plaintiffs attempted to agree with the defendant for the repair

of the dike; that the defendant refused to repair the same; that the plaintiffs repaired the dike at their own expense, and prove the reasonable value of the repair and materials used in repairing the dike.

In the charge to the jury we find:

"If you find from the evidence in the case that the dike is of no common benefit to the land described in the complaint as applying to the defendant, then I instruct you the defendant in this case would not be liable, and it would be your duty to return into court a verdict for defendant. * * If you find from the evidence that the maintenance of this dike is not of sufficient importance to lot 1, section 15, to be maintained, then the defendant would be entitled to a verdict at your hands."

We also there read:

"The burden of proof rests upon the plaintiff to prove by preponderance of the evidence, his claim that the cost of construction was the reasonable cost of constructing the dike."

15. The court further charged that the plaintiffs must prove that the dike on their lands was in repair. The defendant requested no further or more specific instruction to the jury in regard to the question of the benefit to defendant's land by the repair of the dike, and in the absence of such request we think the charge was sufficient in that regard.

The instructions were plain and fairly submitted the cause to the jury. They are not subject to the objections made. We find no reversible error in the record. The judgment of the trial court is affirmed.                                        AFFIRMED.

BROWN, RAND and BELT, JJ., concur.